IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CALUMET PHOTOGRAPHIC, INC., *et al.*, | ) | Case No. 14-08893 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Deborah L. Thorne |

## MEMORANDUM DECISION

This matter presents several questions concerning whether claims arising from the termination of employees prior to the filing of Debtors' voluntary bankruptcy petitions are administrative expenses under the Workers Adjustment and Retraining Notification Act ("WARN Act") and whether a class should be certified to represent the employees in this chapter 7 proceeding. Patricia De Leon, one of the terminated employees, filed a motion seeking to certify the terminated employees as a class, to have the claims deemed WARN Act claims, and to obtain administrative expense priority treatment which would allow payment of these claims before other unsecured and priority claims.[1] The answers to these questions raised by Ms. De Leon are as follows: (1) the claims are not entitled to administrative expense and (2) class action certification is not necessary at this point, if at all. The determination of whether the claims qualify as prepetition WARN Act claims or whether the claims are to be treated as priority claims under § 507 is a determination of fact which is not yet ripe for decision and should be

---

[1] Prior to this motion, De Leon filed an adversary complaint on behalf of herself and potential class action members alleging that the pre-petition mass layoff without requisite notice was a violation of the WARN Act. The court granted the Chapter 7 trustee's motion to dismiss stating that the matters were best addressed through the combination of a request for administrative expense priority and the claims administration process. In the interim, the judge assigned to the case retired, and it was transferred to this court's docket. De Leon now reiterates her WARN Act claim and adds a claim for breach of fiduciary duty/conversion.

treated during the claims administration process.

## FACTUAL HISTORY

Calumet Photographic, Inc. and Calumet photo.com LLC (collectively, the "Debtors") were specialty retailers of photography and video equipment and employed a large workforce including the movant, Patricia De Leon ("De Leon"). On March 12, 2014, Debtors terminated their employees and filed the instant chapter 7 bankruptcy. While the facts leading up to the termination are in dispute,[2] the only relevant fact is that Debtors terminated De Leon, along with many other people, before the bankruptcy petition was filed. As a result, De Leon argues two potential claims arose out of this termination: (1) WARN Act claims and (2) Breach of Fiduciary Duty/Conversion claims.[3]

## WARN ACT CLAIMS

The WARN Act provides that affected employees[4] are entitled to at least sixty days' advance notice of a business closing or covered mass layoff.[5] The WARN Act is intended to:

> provide[ ] protections to workers, their families and
> communities by requiring employers to provide notification 60

---

[2] The court notes that parties dispute the circumstances leading up to the termination. The Trustee has presented evidence through an affidavit from Debtors' counsel stating that prior to filing their petitions, Debtors spent significant time and effort seeking to resolve liquidity issues but were forced to file when their secured lender withdrew financial support. *See* Affidavit of Mark A. Berkoff, Exhibit A to Trustee's Objection to Petition to Treat Claim of Former Employees of Debtor Who Qualify for Damages Under the Warn Act as Priority Claims under 11 U.S.C. § 503(b)(1)(A) or 11 U.S.C.§ 507(A)(4)(5), at ¶ 6 & 7, ECF No. 323. Without this support, Debtors had to notify employees of their immediate termination and file chapter 7 bankruptcy petitions. *Id.* De Leon disputes this characterization, arguing that Debtors knew they would need to terminate employees at an earlier date and could have provided notice. De Leon has presented no evidence to support her argument but could do so if the Trustee objects to her proof of claim.
[3] This memorandum decision only addresses the WARN Act claims because the breach of fiduciary duty/conversion claim was abandoned as it pertains to administrative expense entitlement and the court is not determining the merits of either claim at this point. *See* Response to Motion to Dismiss Petitioner's Petition to Treat Claim of Former Employee of Debtor Who Qualify for Damages under the WARN Act as Priority Under 11 U.S.C. § 503(b)(1)(A) or 11 U.S.C. § 507 (a)(5), at 2, ECF No. 339.
[4] 29 U.S.C. §2101(a)(5) defines affected employees as those "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."
[5] 29 U.S.C. §2102(a).

2

calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.[6]

When an employer fails to provide such a warning, the affected employees are entitled to back pay and benefits for up to sixty days.[7] The WARN Act does, however, "provide exceptions to the notice requirement, including exceptions when terminations are a result of shut downs that were not reasonably foreseeable, natural disasters, or situations where notice would preclude attempts by the employer to obtain capital investments that would have prevented the terminations" (the "faltering company" exception).[8]

De Leon argues that her WARN Act claim falls under 11 U.S.C. § 503(b)(1)(A),[9] particularly (A)(ii), and as a result, the claims of the terminated employees are entitled to administrative expense status ahead of all other creditors holding priority claims. The threshold issue for this case is whether a WARN Act claimant is entitled to administrative expense

---

[6] 20 C.F.R. § 639.1(a). *See In re FF Acquisition Corp.*, 438 B.R. 886, 891 (Bankr. N.D. Miss. 2010), aff'd and appeal dismissed sub nom. *Angles v. Flexible Flyer Liquidating Trust*, 471 B.R. 182 (N.D. Miss 2012), aff'd sub nom. *In re Flexible Flyer Liquidating Trust*, 511 Fed. App'x 369 (5th Cir. 2013). *See also Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999) (noting adoption of WARN Act was "in response to the extensive worker dislocation that occurred in the 1970s and 1980s").
[7] 29 U.S.C. §2104(a)(1).
[8] 29 U.S.C. §2102(b); *In re Powermate Holding Corp.*, 394 B.R. 765, 771 (Bankr. D. Del. 2008).
[9] providing payment for:
    (A) the actual, necessary costs and expenses of preserving the estate including—
        (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
        (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

3

priority as a matter of law.

## INTERSECTION OF WARN ACT CLAIMS AND ADMINISTRATIVE EXPENSES

A bankruptcy filing is intended to provide an equitable distribution of a debtor's assets to all creditors. In most cases, however, the bankruptcy estate does not contain sufficient assets. For this reason, the Bankruptcy Code has provided a priority scheme to determine a distribution structure when there are insufficient assets to pay all creditors in full. Creditors may obtain priority according to the list set forth in 11 U.S.C. § 507.

Administrative expenses are provided second priority under § 507. Accordingly, a creditor must seek a determination from the court that their debt is one of the expenses designated as administrative under § 503. "Because priority for administrative claims departs from the Code's policy of equality of distribution, the party seeking administrative priority bears the burden of proof." *In re First Magnus Fin. Corp.*, 390 B.R. 667, 673 (Bankr. D. Ariz. 2008), *aff'd*, 403 B.R. 659 (D. Ariz. 2009).

Historically, administrative claims under § 503 had to entail the actual, necessary expenses of preserving the estate. 11 U.S.C. § 503(b)(1)(A); (b)(3); and (b)(8). In 2005, Congress added two amendments that called this trend into question: section 503(b)(9),[10] allowing payment for the value of goods received by the debtor within 20 days of the petition date and section 503(b)(1)(A)(ii),[11] the provision at issue.

To qualify as an administrative expense under § 503(b)(1)(A)(ii), a claim must meet four requirements:[12] (1) a wage or benefit awarded by a court or the National Labor Relations Board, (2) as back pay attributable to any period of time occurring post-petition, (3) due to a violation of

---

[10] Pub. L. No. 109-8 § 1227(b) (2005).
[11] Pub. L. No. 109-8 § 329 (2005).
[12] The following is a paraphrased list only applicable to the instant case. For the full statutory language see footnote 9.

4

federal or state law (does not matter when the violation occurred or whether services were rendered), and (4) provided that payment of the expense will not increase the probability of layoff or termination of current employees. 11 U.S.C. § 503(b)(1)(A)(ii) (to be referred to in the rest of the decision as "(A)(ii)"). Unlike § 503(b)(9), which is a clear exception to the post-petition timing requirement, this provision is confusing on its face. Basically, the plain meaning of the statute requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard. Furthermore, it is unclear whether the provision applies to the WARN Act; Congress left few clues as to its intended meaning and it is a matter of first impression in this circuit.[13]

Prior to the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, courts found that WARN Act back pay, for priority purposes, was earned on the date of termination. *In re Beverage Enterprises, Inc.*, 225 B.R. 111, 115 (Bankr. E.D. Pa. 1998); *In re Kitty Hawk, Inc.*, 255 B.R. 428 (Bankr. N.D. Tex. 2000); *In re Cargo, Inc.*, 138 B.R. 923 (Bankr. N.D. Iowa 1992); *In re Hanlin Grp., Inc.*, 176 B.R. 329, 333-34 (Bankr. D.N.J. 1995). If the date of termination was before filing, then there was no administrative expense entitlement. Thus, because of the part of (A)(ii) that requires claims to be attributable to a period of time post-petition, nothing changed in 2005 for pre-petition WARN Act claims.[14] Conceivably, this is why many other cases on this issue still find, post-BAPCPA, that prepetition WARN Act claims are

---

[13] To further make the interpretation of section 503(b)(1(A) a mystery, Congress used the phrase "the actual, necessary costs and expenses of preserving the estate including . . ." followed by (i) and (ii) with the conjunction "and". Does this section mean that both the requirements of (i) and (ii) must be met or does the word "including" indicate that only one of the requirements must be met to be considered an administrative claim under section 503?

[14] As a practical matter, if Congress was considering the WARN Act when it drafted (A)(ii), it is unlikely that it would have included the provision requiring courts to assess whether this payment would lead to termination or layoff of current employees. If a WARN Act claim is at issue, the court is usually not worried about current employees, as there are few, if any, at that point.

5

not entitled to payment as an administrative expense.[15] It is arguable that a post-petition WARN Act claim is now entitled to administrative expense priority, because (A)(ii) removed the previous rule that the claim had to benefit the estate (employees are not required to have provided services post-petition) but this is not the question before the court.

Furthermore, this interpretation fits within the statutory language preceding (A)(ii) by limiting wage related expenses to the "actual, necessary costs of preserving the estate." *In re Continentalafa Dispensing Co.*, 403 B.R. at 658 ("The revision of § 503(b) was not meant to slant the law totally in favor of terminated employees nor confer additional power to the bankruptcy court regarding the WARN Act"). It also follows the general sentiment of the Seventh Circuit Court of Appeals on administrative expenses. *In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir. 1989)(holding that expenses incurred prior to commencement of the second chapter 11 case were not actual or necessary for preserving the estate, because the estate was not yet extant); *In re Resource Technology*, 662 F.3d 472, 476 (7th Cir. 2011)(*citing J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242, 1249-50 (7th Cir. 1985))("The reason administrative claims are given priority is that they are claims for reimbursement by the bankruptcy estate of expenses incurred after the declaration of bankruptcy, in order to preserve and if possible enhance the value of the bankruptcy estate for the benefit of its creditors.").

Accordingly, there is no evidence to support the view that Congress intended to use (A)(ii) to expand administrative expenses to pre-petition WARN Act claims.[16] Back pay awarded under 29 U.S.C. § 2104 for a prepetition termination date has historically been held to

---

[15] *In re Continentalafa Dispensing Co.*, 403 B.R. 653, 658 (Bankr. E.D. Mo. 2009); *In re First Magnus Fin. Corp.*, 390 B.R. at 677; *In re Pace Airlines, Inc.*, 483 B.R. 306, 310-11 (Bankr. M.D.N.C. 2012); *In re Powermate Holding Corp.*, 394 B.R. at 765; *but see In re Truland Group, Inc.*, 520 B.R. 197, 203-04 (Bankr. E.D. Va. 2014)(holding that (A)(ii) does not preclude administrative expense priority for a WARN Act claim due to a pre-petition termination).

[16] In fact, it is more likely that Congress meant to target back pay awarded as the result of a wrongful termination as exemplified in *In re Philadelphia Newspapers, LLC.*, 433 B.R. 164 (Bankr. E.D. Pa. 2010).

be a prepetition claim and nothing presented by De Leon has convinced the court to hold otherwise. Thus, as a matter of law, De Leon is not entitled to administrative expense priority for her WARN Act claims, if in fact, she and other employees hold valid WARN Act claims.[17]

## PRIORITY CLAIM UNDER § 507

At this time, it is unnecessary for the court to determine if De Leon has a priority claim under 11 U.S.C. § 507(a)(4). The previous judge assigned to the case dismissed De Leon's adversary in favor of the claims allowance process. His retirement does not compel the court to re-decide the outcome of an issue previously adjudicated. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011)(quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).[18] Thus, the court will decide the priority issue if an objection is filed to De Leon's claim.

## CLASS ACTION CERTIFICATION

Lastly, there is no reason to certify a class action at this time. If Calumet employees file proofs of claims and the trustee does not object, these claims will be paid if the estate has sufficient funds to do so. Certifying a class action may not make this process easier. A class action may only increase efficiency, if the WARN Act claims are the subject of a contested hearing. The court will reserve its ruling for that day.

## CONCLUSION

For the foregoing reasons, the application of Patricia De Leon to obtain administrative expense payment, priority treatment under 11 U.S.C. § 507, and certification of a class action

---

[17] The court makes no finding at this time as to whether De Leon or any other employee holds a prepetition WARN Act claim as the parties dispute whether the Debtors and the Trustee are able utilize the faltering company exception to exempt them from obligations under the WARN Act. That determination may be made during the claims objection procedure.

[18] It is important to note, this doctrine does not limit the tribunal's power, only directs its discretion. *Id.*

is DENIED. Based on this denial, the court grants leave for De Leon and any other former employee to file or amend their claims.

It may be so ordered.

Dated: May 19, 2016

DEBORAH L. THORNE
UNITED STATES BANKRUPTCY JUDGE